**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **SHAMIRICAL HOLLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO:** |
| **v.** | ) | **_____** |
| | ) | |
| **EXPERIAN INFORMATION** | ) | |
| **SOLUTIONS, INC., TRANS UNION** | ) | **JURY TRIAL DEMANDED** |
| **LLC, EQUIFAX INFORMATION** | ) | |
| **SERVICES LLC, and** | ) | |
| **PROFESSIONAL COLLECTION** | ) | |
| **SERVICE, INC.,** | ) | |
| | | |
| **Defendants.** | | |

## COMPLAINT

1.      This is an action for damages brought by an individual consumer, Shamirical Holley, against Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("TU"), Equifax Information Services LLC ("Equifax"), and Professional Collection Service, Inc. ("PCS") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

### JURISDICTION AND VENUE

2.      This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b) as Defendants regularly conduct business in this district and division and a substantial part of the events giving rise to the claims occurred in this district and division.

4.      Experian has contracted to supply services or things in Georgia.  It sells consumer reports in Georgia and produces consumer reports on Georgia residents.  It also gathers and maintains substantial public records data from Georgia.

5.      TU has contracted to supply services or things in Georgia.  It sells consumer reports in Georgia and produces consumer reports on Georgia residents. It also gathers and maintains substantial public records data from Georgia.

6.      Equifax has contracted to supply services or things in Georgia.  It sells consumer reports in Georgia and produces consumer reports on Georgia residents. It also gathers and maintains substantial public records data from Georgia.

7.      PCS conducts substantial and regular business activities in this judicial district, including obtaining consumer reports on Georgia residents, furnishing information on Georgia residents to consumer reporting agencies ("CRAs"), and seeking to collect on debts of Georgia residents.

## PARTIES

8.      Ms. Holley is a resident of Georgia.  She is a natural person and a "consumer" as protected and governed by the FCRA, 15 U.S.C. § 1681a(c).

9.    Experian is an Ohio corporation.

10.    Experian is a CRA, as defined by 15 U.S.C. § 1681a(f).

11.    Equifax is a Georgia limited liability company.

12.    Equifax is a CRA, as defined by 15 U.S.C. § 1681a(f).

13.    TU is a Delaware limited liability company.

14.    TU is a CRA, as defined by 15 U.S.C. § 1681a(f).

15.    PCS is a Georgia corporation.

16.    PCS is a person who furnishes information to consumer reporting agencies under the FCRA, 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

### Sections 1681e(b) and 1681i(a) of the FCRA Require Substantive Investigations and Prohibit Mere "Parroting" of CRAs' Creditor-Customers

17.    "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001).  "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit

reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

18.     Section 1681e(b) sets forth the CRA's overall duty with respect to accuracy:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Id.*

19.     Section 1681i(a), on the other hand, requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through a dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

20.     Section 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1160

(11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

21. It has long been the law that a CRA, such as Experian, Equifax and TU, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item. *See, e.g.*, *Pinner v. Schmidt,* 805 F.2d 1258, 1262 (5th Cir. 1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

22. That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

23.     As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, 'investigation,' is defined as '[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining 'investigation' as 'a searching inquiry').

357 F.3d 426, 430 (4th Cir. 2004).

24.     Further, as the CRAs here are aware, courts have repeatedly held that even though the term "investigation" is not used in Section 1681e(b), it is clear that a CRA has a duty to conduct a reasonable initial investigation pursuant to Section 1681e(b) as well as Section 1681i(a) and that this is "central" to the CRA's duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) 'reasonable procedures' that (2) 'assure' (3) 'maximum possible accuracy.' To 'assure' means 'to make sure or certain: put beyond all doubt.' *Webster's Third New International Dictionary* 133 (1993). 'Maximum' means the 'greatest in quantity or highest degree attainable' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived . . . .' *Id.* at 1396, 1771. It is difficult to imagine how 'maximum possible accuracy' could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a 'reinvestigation,' necessarily implying that an 'investigation' was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

25.     The Consumer Financial Protection Bureau has noted that "experience indicates that [CRAs] lack incentives and under-invest in accuracy."   Consumer

Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, Mar. 2, 2017).  This is particularly true as to how the CRAs here have complied with their now 50-year-old obligation to conduct meaningful accuracy investigations.  All three Defendant CRAs have been repeatedly sued by consumers, sanctioned by regulators, and reprimanded by both District and Appellate courts to do more than an automated parroting of what their customer-creditors instruct.

26.    Additionally, the FCRA imposes duties on persons who furnish information to a consumer reporting agency (a "furnisher").  *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5).  Specifically, the furnisher must take certain actions after receipt of notice of a consumer dispute from a consumer reporting agency.  15 U.S.C. § 1681s-2-(b)(1)(A-E).[1]

27.    Section 1681s-2(b) of the FCRA establishes a mechanism for consumers to dispute the accuracy or completeness of information that furnishers provide to consumer reporting agencies.  After a consumer has submitted a dispute to a consumer reporting agency, the consumer reporting agency must notify the furnisher of the disputed information.  15 U.S.C. § 1681i(a)(2).  The consumer reporting agency must provide this notice of dispute within five days of receipt of

---

[1] Plaintiff asserts a claim against PCS under Section 1681s-2(b), and not under Section 1681s-2(a).

the dispute and must include "all relevant information" provided by the consumer. 15 U.S.C. § 1681i(a)(2)(B).

28.    Once a furnisher receives notice of a dispute from a consumer reporting agency, Section 1681s-2(b) requires that the furnisher "shall" (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the consumer reporting agency in connection with the dispute; and (3) report the results of the investigation to the consumer reporting agency.  15 U.S.C. § 1681s-2(b)(1)(A)-(C).

29.    Should the investigation determine that the disputed information is inaccurate or incomplete or cannot be verified, the furnisher must modify, delete, or permanently block the reporting of that information to consumer reporting agencies, as appropriate based on the results of the reinvestigation.  15 U.S.C. § 1681s-2(b)(1)(E).

### Plaintiff's Experience

30.    In July 2023, Woodruff Companies a/a/f Park at 4690 obtained a judgment against Plaintiff in a dispossessory proceeding in the Magistrate Court of Bibb County (the "Judgment").

31.    The Judgment, signed by the Judge on July 28, 2023, states that Plaintiff owes zero dollars to Woodruff Companies a/a/f Park at 4690, and it granted possession with a seven-day delay to Woodruff Companies a/a/f Park at 4690.

32.    Plaintiff moved from Park at 4690 at that point.

33.    Shortly thereafter, Woodruff Companies a/a/f Park at 4690 contracted with PCS for Plaintiff's account.

34.    After it contracted for Plaintiff's account, PCS reported to Equifax, Experian and Trans Union that Plaintiff had a negative "Collection/Charge-off" account with it, with the original creditor as The Park at 4690.  It reported that the account was opened on October 4, 2023, and that the unpaid balance on the account was $1,525.00.

35.    PCS' reporting was inaccurate.

36.    The Judgment shows that Plaintiff owed nothing to The Park at 4690.

37.    Shortly after Plaintiff learned about the inaccurate reporting, she filed disputes with Experian, Equifax and Trans Union.

38.    In several of her disputes, Plaintiff told Experian, Equifax and Trans Union that they were inaccurately reporting that she had an unpaid balance, and she told them that she owed nothing to PCS or The Park at 4690.

39.    Additionally, Plaintiff provided Experian, Equifax and Trans Union with a copy of the Judgment, which showed that she owed nothing.

40.    Equifax, Experian and Trans Union received Plaintiff's disputes.

41.    Following their receipt of Plaintiff's disputes, Equifax, Experian and Trans Union conducted investigations.

42.  Equifax, Experian and Trans Union sent Plaintiff's disputes to PCS.

43.  PCS received the disputes from Equifax, Experian and Trans Union.

44.  PCS did not conduct reasonable reinvestigations into some or all of Plaintiff's disputes.

45.  For example, PCS failed to review the Judgment showing that Plaintiff owed nothing to The Park at 4690.

46.  Instead, PCS simply reported to Equifax, Experian and Trans Union that it had verified the reporting.

47.  Equifax, Experian and Trans Union failed to correct their inaccurate reporting as part of their own dispute reinvestigations.

48.  Equifax, Experian and Trans Union simply parroted the results of PCS' reinvestigation results, and took no steps of their own to determine whether their reporting was accurate.

49.  Equifax, Experian and Trans Union reported to Plaintiff that PCS had "verified" the reporting.

50.  Equifax, Experian and Trans Union simply ignored the Judgment as part of their reinvestigations.

51.  As a result of Defendants' violations, Plaintiff has suffered, and continues to suffer, actual damages, lost opportunities to receive credit, economic loss, damage to reputation, reduction in credit score, emotional distress, and

interference with normal and usual activities for which she seeks damages in an amount to be determined by the jury.

52.   In particular, and as examples, Plaintiff has been denied multiple rental applications because of the PCS collection account on her credit file:

- "Your application has been denied due to an existing collection account found on your credit report";

- "Your application did not meet the requirements for approval.  The specific reason for this decision is: PAST DUE COLLECTION ACCOUNT"' and

- "We are sorry to advise you that we cannot move forward with your application at this time.  This decision was made based on information obtained from your credit report, specifically regarding an existing collection account receiving your request."

53.   Because of the PCS collection account and Plaintiff's inability to obtain housing, in January and February 2026 she was forced into homelessness. Indeed, Plaintiff completed a "Homelessness Verification/Referral" for Crossroads Community Ministries in which she verified that she had been living on the streets for the past 30 days, and in which Crossroads Community Ministries certified that she met HUD's definition of homelessness and was in need of services.

**FIRST CLAIM FOR RELIEF**

**(15 U.S.C. § 1681i(a))**

**(against Equifax, Experian, Trans Union)**

54.    Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

55.    Defendants violated 15 U.S.C. § 1681i by, among other things, failing to (1) "conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller," and (2) provide to Plaintiff the notices required under 15 U.S.C. § 1681i(a)(6).

56.    Defendants knew or should have known about their obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

57.    Defendants obtained or had available substantial written materials that apprised them of their duties under the FCRA.

58.    Despite knowing of these legal obligations, Defendants acted consciously in breaching their known duties and deprived Plaintiff of her rights under the FCRA.

59.    As a result of these FCRA violations, Plaintiff has suffered, and continues to suffer, actual damages, lost opportunities to receive credit, economic

loss, damage to reputation, reduction in credit score, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

60.    The violations by Defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

61.    Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## SECOND CLAIM FOR RELIEF

## (15 U.S.C. § 1681e(b))

## (against Equifax, Experian, Trans Union)

62.    Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

63.    Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report furnished regarding Plaintiff.

64.    Defendants reported information about Plaintiff that they had reason to know was inaccurate.

65. Defendants knew or should have known about their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

66. Defendants obtained or had available substantial written materials that apprised them of their duties under the FCRA.

67. Despite knowing of these legal obligations, Defendants acted consciously in breaching their known duties and deprived Plaintiff of her rights under the FCRA.

68. As a result of these FCRA violations, Plaintiff has suffered, and continues to suffer, actual damages, lost opportunities to receive credit, economic loss, damage to reputation, reduction in credit score, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

69. Defendants' violations of 15 U.S.C. § 1681e(b) were willful, rendering them liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

70. The violations by Defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C.

§ 1681n.  Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

71.    Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## THIRD CLAIM FOR RELIEF

### (15 U.S.C. § 1681s-2(b))

### (against PCS)

72.    Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

73.    Defendant understood the nature of Plaintiff's disputes when it received them from the CRAs.

74.    Defendant violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

75.    Defendant violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the CRAs.

76.    Defendant violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the reporting of the inaccurate and derogatory information it was reporting to the CRAs about Plaintiff.

77.    Defendant knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA,

in the promulgations of the Federal Trade Commission, and in well-established case law.

78.    Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

79.    Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiff of her rights under the FCRA.

80.    Defendant's violation of the FCRA was willful, rendering it liable pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

81.    Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

   a. An award of actual, statutory and punitive damages for Plaintiff;

   b. An award of pre-judgment and post-judgment interest as provided by law;

   c. An award of attorneys' fees and costs; and

   d. Such other relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

**PLAINTIFF hereby demands a jury trial on all claims for which she has a right to a jury.**

DATED: March 26, 2026

By: /s/ Andrew Weiner
Andrew L. Weiner
Georgia Bar No. 808278
Jeffrey B. Sand
Georgia Bar No. 181568
WEINER & SAND LLC
6065 Roswell Road
Suite 700-121
Sandy Springs, GA  30328
(404) 254-0842 (Tel.)
(866) 800-1482 (Fax)
aw@wsjustice.com

COUNSEL FOR PLAINTIFF